UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CAROLYN BROWN, ET AL.              CIVIL ACTION NO.: 6:15-CV-2724

VERSUS                             MAGISTRATE JUDGE HANNA

ST. LANDRY PARISH SHERIFF'S        BY CONSENT OF THE PARTIES
DEPT, ET AL

## MEMORANDUM RULING

Currently pending is a motion for summary judgment filed by defendants Sheriff Bobby Guidroz and Assistant Warden Ovide Stelly. [Rec. Doc. 14]. The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Roland Brown ("Brown") died while he was an inmate at the St. Landry Parish Jail ("SLPJ") allegedly because he was denied adequate medical care.[1] As a result, Brown's wife and children filed a complaint based on 28 U.S.C. §1983 against the St. Landry Parish Sheriff's Department ("SLPSD"), Sheriff Bobby Guidroz, in his

---

[1]     It is not totally clear whether the decedent was a pre-trial detainee or was serving a sentence following a conviction. However, for purposes of deciding this motion it is not pertinent.

individual and official capacity, and Assistant Warden Ovide Stelly ("Stelly"), in his individual and official capacity.[2] The plaintiffs have also brought various claims under state law. Although the complaint contains a number of citations to various provisions of the Constitution, the Court construes the complaint to allege violations of the decedent's rights under the Eighth and/or Fourteenth Amendment to the Constitution.[3] The state law claims are based on La.C.C. Art. 2315 and the Louisiana Constitution.

The defendants contend Brown voluntarily discontinued his blood pressure medication in writing, and to the extent his death was caused by complications of hypertension, it was not caused by anything the defendants did or did not do. The plaintiffs contend that the defendants failed to provide Brown with his blood pressure medicine without his permission because the signatures on the forms which purport to voluntarily discontinue his blood pressure medication are not Brown's signature.

The defendants further contend that the uncontroverted evidence demonstrates that the medical staff at the SLPJ who allegedly discontinued Brown's medication and cleared him to return to his bunk where he subsequently died, were not

---

[2] The St. Landry Parish Sheriff's Department is not a juridical entity which can be sued. Although not raised, for the reasons set forth below the claims against it will be dismissed.

[3] For example, the plaintiff alleges violations of the First, Fourth, and Ninth Amendments to the Constitution . None of these Articles are implicated by the factual allegations.

employees of the Sheriff. Further, neither the assistant warden or any other employees of the Sheriff's department were responsible for the dispensing/administering of medication, and the medical treatment, or lack thereof, rendered to Brown when he was brought to the medical staff for attention and/or medication. Finally, when the decedent did have medical complaints, he was promptly brought to the medical staff by the assistant warden. Therefore, the defendants cannot be liable for their actions or alleged inactions.

The plaintiffs allege, but provide no evidence, that Stelly was made aware of Brown's medical problems by his cellmate, Phil Bryant, but Stelly ignored Bryant's pleas for help and failed to render aid and assistance. Although they have provided evidence that SLPSD deputies actually gave medications to inmates, there is no evidence that non-medical staff were involved in determining what medications were given and in what amounts. The plaintiffs do not address the contention that the medical staff were not employees of the Sheriff.

## LAW AND ANALYSIS

### A. THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of

its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[4] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[5]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[6] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[7] All facts and inferences are construed in the light most favorable to the nonmoving party.[8]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[4]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[5]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[6]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]    *Washburn v. Harvey*, 504 F.3d at 508.

[8]    *Brumfield v. Hollins*, 551 F.3d at 326, citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

claim.[9]  The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[10]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[11]  The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[12]  "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[13]

Additionally, when a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to raise facts that dispute the defendant's assertion of qualified immunity.[14] However, the court must still view all

---

[9]  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[10]  *Condrey v. Suntrust Bank of Ga*., 431 F.3d 191, 197 (5th Cir. 2005).

[11]  *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005).

[12]  *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d at 540.

[13]  *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

[14]  *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

5

facts and make all reasonable inferences in light most favorable to the plaintiff.[15] If the plaintiff fails, the motion for summary judgment should be granted.

**B.     THE STANDARD FOR EVALUATING A SECTION 1983 CLAIM**

Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights.  Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[16]  To state a section 1983 claim, a plaintiff must:  (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[17]  In this case, the defendants do not contest whether Sheriff Guidroz and Stelly acted under color of law at any relevant time, but they do challenge as part of their qualified immunity defense whether the defendants' alleged actions or omissions are Constitutional violations.

---

[15]     *Brown v. Callahan,* 623 F.3d at 253.

[16]     *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs*., 380 F.3d 872, 879 (5th Cir. 2004).

[17]     *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Moore v. Willis Independent School Dist*., 233 F.3d 871, 874 (5th Cir. 2000).

The claims against Sheriff Guidroz and Stelly are brought both in their individual and official capacity. A suit against a government official in his official capacity is a suit against the government entity of which he is an agent.[18] Municipalities are not vicariously liable for violations committed by their employees, but they are liable when their official policies cause their employees to violate another person's constitutional rights.[19] Therefore, a claim of municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom.[20] The proper analysis of such claims requires an inquiry into two separate issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation."[21]

A municipality's official policies include any persistent, widespread practice of officials or employees that is not authorized by officially adopted and promulgated

---

[18] *Burge v. Parish of St. Tammany,* 187 F.3d 452, 468 (5th Cir. 1999).

[19] *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

[20] *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012), quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[21] *Doe ex rel. Magee* , 675 F.3d 867, quoting *Collins v. City of Harker Heights, Tex*. 503 U.S. 115, 120 (1992).

policy, but is so common and well settled as to constitute a custom that fairly represents municipal policy.[22]

In order to assert a valid claim against an official in his individual capacity, a §1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.[23] "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[24] "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[25]

To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiffs must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights

---

[22]   *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012).

[23]   *Jones v. Lowndes County, Miss.*, 678 F.3d at 349.

[24]   *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

[25]   *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

committed by their subordinates.[26]   Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."[27]

The plaintiffs' claims also include allegations of the defendants' failure to properly train and supervise, as well as maintain policies to provide required medication and treatment for medical conditions.   A municipality may incur §1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts.[28]   When such a claim is asserted, the plaintiff must show (1) that the training or hiring procedures of the municipality's policymaker were inadequate; (2) that the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) that the inadequate hiring or training policy directly caused the plaintiff's injury.[29]

A supervisor may be liable for failure to supervise or train if:   (1) the supervisor failed to supervise or train the subordinate officer; (2) a causal connection exists between the failure to supervise or train and the violation of the plaintiff's

---

[26]     *Porter v. Epps*, 659 F.3d at 446; *Gates v. Texas*, 537 F.3d at 435.

[27]     *Porter v. Epps,* 659 F.3d at 447, quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011).

[28]     *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

[29]     *Baker v. Putnal*, 75 F.3d at 200; *Benavides v. County of Wilson*, 955 F.2d at 972.

rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights.[30]

## C.  THE STANDARD FOR EVALUATING QUALIFIED IMMUNITY

Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their individual capacity, while performing discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[31]  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[32]

Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."[33]  A defendant's assertion of qualified immunity is analyzed under a two-prong test.[34]  The first prong asks

---

[30]     *Porter v. Epps*, 659 F.3d at 446; *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

[31]     *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  See, also, *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

[32]     *Whitley v. Hanna*, 726 F.3d at 638 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[33]     *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d at 326).

[34]     *Mason v. Lafayette City-Parish Consol. Government*, 806 F.3d 268, 275 (5th Cir. 2015), (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

whether the plaintiff has shown sufficient facts to "make out a violation of a constitutional right."[35]  The second prong requires the court to determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[36]

The Supreme Court articulated the analysis as follows:

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]

.    .    .

The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. [T]he salient question is whether the state of the law at the time of an incident provided "fair warning" to the defendants that their alleged [conduct] was unconstitutional.

Courts have discretion to decide the order in which to engage these two prongs.  But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.  This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to

---

[35]     *Id.*

[36]     *Id.*

judgment as a matter of law.  In making that determination, a court must view the evidence in the light most favorable to the opposing party.[37]

## D.    DELIBERATE INDIFFERENCE TO THE MEDICAL NEEDS OF THE DETAINEE

The plaintiffs contend that Brown's constitutional rights were violated when the defendants acted with deliberate indifference to provide him with his blood pressure medicine and adequate medical care."A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain."[38] Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts taken from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur.[39]

To meet the deliberate indifference standard, a plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him

---

[37]      *Tolan v. Cotton,* ___ U.S. ___, 134 S.Ct. 1861, 1865-66 (2014) (internal quotation marks and citations omitted).  See, also, *Pratt v. Harris Cty. Tx.,* 822 F.3d 174, 181 (5th Cir. 2016).

[38]      *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

[39]      *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[40] Deliberate indifference may be exhibited by medical personnel in response to a prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.[41]

Pretrial detainees also have a constitutional right not to have confining officials treat their basic needs – including a need for reasonable medical care – with deliberate indifference, under the Due Process Clause of the Fourteenth Amendment.[42] This right was clearly established law at the time of the incident in question.[43]

"The State's exercise of its power to hold detainees and prisoners. . . brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an

---

[40]     *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[41]     *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

[42]     See *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir.2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs." (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

[43]     See, *Estate of Allison v. Wansley*, 524 Fed. App'x 963, 970, 2013 WL 1983959, at *6 (5th Cir. 2013).

individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."[44]

A party alleging that an "episodic act or omission" resulted in an unconstitutional violation of a pretrial detainee's Fourteenth Amendment rights is required to show that the official's action constituted "deliberate indifference."[45] An episodic act or omission of a state official does not violate a pretrial detainee's due process right to medical care unless the official acted or failed to act with *subjective* deliberate indifference to the detainee's rights, as defined by the United States Supreme Court. "[D]eliberate indifference entails something more than mere negligence [and]. . . something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[46] In other words, "deliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other."[47] "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly

---

[44] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638-39 (5th Cir. 1996) (en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200) (internal quotation marks omitted).

[45] *Hare*, 74 F.3d at 647-48.

[46] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[47] *Id.,* at 836.

disregarding that risk."[48]   The Court also explained that to act recklessly in this context means to consciously disregard a substantial risk of serious harm.[49]

The standards applicable to the facts of this case may be stated as follows:

A prison official acts with subjective deliberate indifference when he (1) "knew of" and (2) "disregarded an excessive risk to the [detainee's] health or safety." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (*citing Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir. 2001) (alteration in original). [50]

## E.   THERE IS A GENUINE ISSUE OF FACT WHETHER THE DECEDENT VOLUNTARILY TERMINATED HIS OWN MEDICATION.

Prior to September 15, 2015, the medical records indicate Brown was provided blood pressure medication as prescribed.[51] Stelly explained the procedure applicable to execution and handling of a request to discontinue medication forms in his deposition. He testified that an SLPSD deputy will bring the form to an inmate when the inmate makes a request to stop taking their medication.[52] Then, the inmate will sign the form without any inquiries or explanation from the SLPSD deputy.[53] Once

---

[48]     *Id.*

[49]     *Id.,* at 839-40.

[50]     *Nagle v. Gusman*, 61 F.Supp.3d 609, 628 (E.D. La. 2014).

[51]     Rec. Doc. 20, p. 1.

[52]     Rec. Doc. 31-1, p. 20-21.

[53]     Rec. Doc. 31-1, p. 21.

the inmate signs the form, the SLPSD deputy brings the form to the nurse and the nurse should sign the form on the witness line.[54]

The defendants submitted two documents which purport to be signed by the decedent in which he requested to discontinue medication. [Rec. Doc. 14-4]. One is dated September 15, 2015 and the signature is Joseph R. Brown. The other is dated September 21, 2015 and the signature is Joseph Roland Brown.  In the former document, the medication to be discontinued is identified in a completely different handwriting from that contained on the rest of the document as "Amlodipine 2.5 mg [the medical sign for the word 'per'] day." Amlodipine is a drug commonly used to treat hypertension and coronary disease.[55]  The latter form indicates the medicine to be discontinued as "B.P." and the handwriting appears to match the handwriting contained on the rest of the form.

The reason given for the request on September 15 is "I don't wanna go cause I don't wanna catch nothing I aint got."[56] On the September 21 request the

---

[54]     Rec. Doc. 31-1, p. 21.

[55]     Wikipedia, https://www.en.wikipedia.org/wiki/Amlodipine (Last visited March 12, 2018).

[56]     Rec. Doc. 14-4, p. 2.

handwritten reason for discontinuing the "B.P." medicine is "I don't want to go to second floor."[57] The handwriting on both of these statements appears to be the same.

Neither form is witnessed or signed by a nurse and both forms contain the following statement above the inmate signature line, "I have been instructed by the nurse and/or physician and understand the significance and possible consequence(s) of discontinuing said medication(s) and I choose to exercise my right to refuse said medication(s)."[58] Stelly further testified that he did not know which SLPSD deputy was present when Brown's forms were allegedly executed and there is no way to determine who it might have been.[59]

The plaintiffs contend the signatures on the forms are not those of Brown. In support of this contention, the plaintiffs submitted a certified record of court proceedings that contains the signature "Roland Brown" and the plaintiffs state, without evidentiary support, that this is the signature customarily used by Brown. This Court is unable to discern if the three different signatures are all penned by the same hand. Since all inferences must be drawn in favor of the non-movant, the inconsistencies in the unauthenticated signatures create a genuine issue of fact

---

[57]    Rec. Doc. 14-4, p.1.

[58]    Rec. Doc. 14-4, pp. 1-2.

[59]    Rec. Doc. 31-1, p. 19-22.

whether the two requests to discontinue the medication forms were actually signed by Brown in the first instance, but more importantly, whether he voluntarily terminated his medication after having been instructed by a nurse and/or physician of the significance and possible consequences of discontinuing his medication. However, that does not end the analysis of whether his constitutional right to adequate medical care was violated.

**F.    THERE IS A MATERIAL ISSUE OF FACT WHETHER BROWN'S CONSTITUTIONAL RIGHT TO ADEQUATE MEDICAL CARE WAS VIOLATED.**

On October 7, 2015, Brown complained that his arm was numb.[60] He was taken by Stelly to the nurse station where he was examined and cleared by Nurse Connie Lanclos to return to his bunk at approximately 5:00 p.m.[61]  The medical record indicates his blood pressure was 152/94 with a pulse of 65 and that the "inmate reports he had a bad day and needed to talk to his lawyer."[62]  He was given 200 milligrams of Ibuprofen for a headache and cleared to return to his bunk.[63] These events are corroborated to some degree by Brown's cellmate, Phil Bryant.

---

[60]    Rec. Doc. 20, p.2.

[61]    Rec. Doc. 20, p.2; Doc. 14-5.

[62]    Rec. Doc. 14-5.

[63]    Id.

In his affidavit, Bryant attests that Brown complained of chest and head pain with shortness of breath, stomach pain and paralysis.[64] When Brown tried to get off the toilet, he fell to the floor.[65] Bryant summoned Stelly and Brown was taken out of the cell and returned about an hour later.[66] It is at this point the evidence is in direct contradiction.

According to his verification, Stelly and SLPSD deputies checked on Brown and Stelly personally spoke to him at approximately 6:30 p.m. the same night.[67] He advised Nurse Tammy Prudhomme of his observations and was advised that Brown had been cleared to return to his bunk and would be examined the following morning.[68]

According to Bryant, later the same night Brown fell out of bed, injuring his mouth and head, and was observed by Bryant to be "bleeding, incoherent and again, in obvious need of care."[69] Bryant notified staff and Stelly "ignored Mr. Brown and

---

[64]    Rec. Doc. 34-2, p. 1.

[65]    Id.

[66]    Id.

[67]    Rec. Doc. 20, p. 2.

[68]    Id.

[69]    Rec. Doc. 34-2, p. 2.

Mr. Bryant's pleas for help, showing a lack of medical attention and deliberate indifference to Mr. Brown's basic human needs and right to medical care."[70]

The following morning Bryant reported that Brown was unresponsive. Medical staff were summoned and Brown was found to be unresponsive but breathing.[71] He subsequently died. There is no evidence as to the cause of death or whether it was in any way related to the alleged failure to take blood pressure medication, however that inference must be drawn in favor of the non-movant at this stage.

Given these factual discrepancies as to what Stelly was aware of and his response, there is a genuine issue of material fact whether there was a constitutional violation by Stelly. Therefore, the motion for summary judgment brought by Stelly for the claims made against him in his individual capacity must be denied.

However, there is no evidence whatsoever of any personal involvement by the Sheriff in the alleged failure to provide medical care or the alleged termination of Brown's medication. There is also no evidence that he committed any wrongful actions that were causally related to the alleged failure to provide medical care. Therefore, the plaintiffs have failed to establish the Sheriff violated a constitutional

---

[70] Id. The Court notes the language in the affidavit tracks the language of the legal standard and gives no credence to the legal conclusion couched therein.

[71] Rec. Doc. 14-5.

right and the Sheriff is entitled to qualified immunity for the claims against him in his individual capacity.

**G.    THE OFFICIAL CAPACITY AND STATE LAW TORT CLAIMS AGAINST SHERIFF GUIDROZ AND STELLY SHOULD BE MAINTAINED.**

Since the motion only seeks dismissals based on qualified immunity, there is no request before the Court to dismiss the official capacity claims, the failure to train or supervise claims or the Louisiana state law claims that are not based on the Louisiana Constitution. To the extent the defendants wish to place those issues before the Court, they should do so by another motion that tracks the standards set forth herein. However, the Court does raise *sua sponte* the failure to state a cause of action against the SLPSD.

**E.    ST. LANDRY PARISH SHERIFF'S DEPARTMENT**

Plaintiffs name the St. Landry Parish Sheriff's Department as a defendant. Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."[72] Thus, Louisiana law governs whether the St. Landry  Parish Sheriff's Office has the capacity to be sued in this action.

---

[72]        Fed. R. Civ. P. 17(b).

Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership."[73] It is well settled under Louisiana law that a sheriff's department is not a legal entity capable of being sued.[74] Thus, the St. Landry Parish Sheriff's Office is not a juridical person capable of being sued under state or federal law. Plaintiff's claims against it will be dismissed.

## CONCLUSION

There are genuine issues of material fact whether Stelly violated Brown's constitutional right to adequate medical care. Therefore, this Court finds that the plaintiffs have negated this defendant's defense of qualified immunity at the summary judgment stage and the motion for summary judgment seeking dismissal of the claims against Stelly in his individual capacity is DENIED. However, there is no genuine issue of material fact whether Sheriff Guidroz is entitled to qualified immunity and summary judgment is GRANTED as to the claims against him in his individual capacity. The Court further finds, as a matter of law, there is no cause of action

---

[73]  La. Civ. Code Art. 24.

[74]  See *Valentine v. Bonneville Ins. Co.*, 691 So. 2d 665, 668 (La. 1997); see also *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 283 (5th Cir. 2002) ("The law of Louisiana affords no legal status to the Parish Sheriff's Department wherein said department can sue or be sued, such status being reserved for the Sheriff individually.")

against the St. Landry Parish Sheriffs Department as it is not an entity capable of being sued and the claims against that non-entity are DISMISSED.

Signed at Lafayette, Louisiana on this 21st day of March 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE